NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellant*,

*v.*

KARRUS DEMAR WAITS, *Appellee*.

No. 1 CA-CR 16-0245
FILED 12-29-2017

Appeal from the Superior Court in Maricopa County
No.  CR2015-145527-001
The Honorable Jerry Bernstein, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Adena J. Astrowsky
*Counsel for Appellant*

Maricopa County Public Defender's Office, Phoenix
By Nicholaus Podsiadlik
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Donn Kessler (retired) joined. Judge Kent E. Cattani dissented.

---

**S W A N N,** Judge:

**¶1** Moments before the jury was to be sworn, the state sought to dismiss its case against Karrus Demar Waits without prejudice. The court dismissed the case with prejudice, and the state appeals that order. We conclude the court acted within its discretion, and we therefore affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2** In September 2015, police officers responded to a report of a family fight at an apartment complex. The officers were flagged down by the victim, who told them that "Karrus" had assaulted him and taken his phone. The officers saw Waits walking away from the complex. When they approached him, he began to run and he threw a cell phone. Officers arrested Waits and recovered the cell phone. Waits was charged with robbery, a class 4 felony.

**¶3** The last day for trial under Ariz. R. Crim. P. ("Rule") 8 was April 28, 2016. On March 23, 2016, the parties informed the court they were ready for trial and the court set a "Firm Trial Date" of March 29, 2016. And despite its representation that it was ready to proceed to trial on a date certain, the state had not yet located the victim.

**¶4** On March 28, after the state had confirmed its readiness for trial, the state's investigator informed the prosecutor that all leads to the victim had been exhausted and that he was giving up the search. But on March 29, the victim contacted the investigator, and informed the prosecutor he would be in town for trial. That morning, the prosecutor again informed the court he was ready for trial. The prosecutor told the victim he would call him later that day with the trial schedule. The jury was selected on March 30. But at the state's request, it was not sworn that day.

**¶5** Over the course of March 29 and 30, the prosecutor called the victim "at least 30 times," sent him multiple text messages, had a victim

advocate call him, and sent the investigator and a uniformed police officer to the victim's mother's house where the victim had indicated he was staying. The victim's mother informed the officers that the victim was not at her house and that she had not seen him for months.

¶6 Immediately before jury selection, the state asked that the jury be selected but not sworn until the next day, because it could not reach the victim. The state represented that it would dismiss the case if the victim could not be located. The court agreed to consider the matter later but was hesitant to delay swearing the jury. In the midst of jury selection, the court revisited the issue. The relevant exchange was as follows:

> THE COURT: . . . so I probably will swear in the jury. . . . Unless there is a good reason why not.
>
> [PROSECUTOR]: . . . there is a slight familial relationship between the victim and the defendant.
>
> THE COURT: There is?
>
> [PROSECUTOR]: As I understood it, the victim's girlfriend's mother was or is dating the defendant.
>
> THE COURT: All right. I'll consider it then.

The prosecutor's speculative statements aside, there was no evidence of a familial relationship, an emergency, or undue influence on the victim by the defendant. After selecting the jury panel, and without discussing the matter further with the parties, the court decided it would wait to swear the jury.

¶7 On March 31, despite his earlier representation that the state was ready for trial, the prosecutor told the court that the state was unable to proceed without the victim, and moved to dismiss the case without prejudice under Rule 16.6. Waits did not object to the state's request for dismissal, but asked that it be with prejudice.

¶8 The court found that the prosecutor was not attempting to circumvent Rule 8, but ruled that:

> The dismissal shall be with prejudice; however, there's something [the prosecutor] said yesterday, that is some sort of familia[l] relationship . . . .

> If it's found -- if the State presents evidence to show that there was some coercion or influence to get [the victim] not to appear or finds out there was some emergency why he couldn't be here, the Court will entertain a motion to modify its decision.
>
> At the behest of [the State], I did not swear in the jury yesterday, so if I had, it would have been with prejudice, and that also factors into this.[1]

**¶9**     The court granted the motion and dismissed the case with prejudice.

## DISCUSSION

**¶10**     The state asks us to strike the words "with prejudice" from the court's order dismissing the case. We review orders dismissing criminal charges for abuse of discretion. *State v. Lemming*, 188 Ariz. 459, 460 (App. 1997). "Abuse of discretion" is a catchall term for errors trial courts make in their gamut of decisions, orders, and rulings. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 329 (1985). When a court's decision is based on "an assessment of conflicting procedural, factual or equitable considerations which vary from case to case and which can be better determined or resolved by the [court], [which] has a more immediate grasp of all the facts of the case, an opportunity to see the parties, lawyers and witnesses, and [which] can better assess the impact of what occurs before [it]," we are loath to substitute our judgment. *Id.* (citation omitted).

**¶11**     Rule 16.6 provides in relevant part:

> **a. On Prosecutor's Motion.**  The court, on motion of the prosecutor showing good cause therefor, may order that a prosecution be dismissed at any time upon finding that the

---

[1]     On appeal, the state did not provide a transcript of the March 30 proceedings, during which the victim's potential testimony was discussed, the request not to swear the jury was made, and the prosecutor discussed a possible "familial relationship" between the defendant and the victim. *See State v. Zuck*, 134 Ariz. 509, 512–13 (1982) ("It is the duty of counsel who raise objections on appeal to see that the record before us contains the material to which they take exception."). In the interests of justice, we *sua sponte* ordered transcripts of the March 30 proceeding. *See* ARCAP 11(g)(4).

purpose of the dismissal is not to avoid the provisions of Rule 8.

. . . .

**c. Record.**  The court shall state, on the record, its reasons for ordering dismissal of any prosecution.

**d. Effect of Dismissal.**  Dismissal of a prosecution shall be without prejudice to commencement of another prosecution, unless the court order finds that the interests of justice require that the dismissal be with prejudice.

**¶12**        Though the language of the rule refers only to the "interests of justice," this court has held that the most important factor in determining "whether a dismissal should be with or without prejudice is whether a delay will result in prejudice to the defendant."  *State v. Granados*, 172 Ariz. 405, 407 (App. 1991).

**¶13**        The state argues that because Rule 16.6(d) favors dismissals without prejudice, the superior court's failure to make a record of the prejudice Waits would suffer if the case were dismissed without prejudice constituted an abuse of discretion.  *See State v. Gilbert*, 172 Ariz. 402, 404 (App. 1991) (holding that court abused discretion by basing dismissal with prejudice solely on generalized finding of desirability of finality).  But even in the absence of an express finding as to the interests of justice or prejudice to the defendant, we affirm dismissals with prejudice when the record supports the order.  *See State v. Marquess*, 168 Ariz. 123, 126 (App. 1991).

**¶14**        On this record, we cannot say the court abused its discretion.

**¶15**        Before the victim contacted the investigator, the prosecutor told the court the state was ready to proceed to trial.  When a party asserts that it is ready for trial, it assents to the court's power to put it to its proof at the peril of its case.  The assertion—made by an officer of the court—has meaning, and the court was entitled to rely on it.  The parties agreed to a trial date (and the agreement was not conditional on the participation of the then-unavailable victim), the court's calendar was dedicated to the case, other cases necessarily were required to wait for trial, and a jury was chosen.  In these circumstances, the breadth of the court's discretion regarding the management of the case and its own calendar was at its apex.

**¶16**        We observe that nothing unexpected happened on the eve of trial to impair the state's case—the victim had not been located, much less

subpoenaed, at the time the state represented it was ready for trial. The fortuitous communication from the victim raised the possibility that the state's case might be *easier* to try than planned, but the absence of the victim merely left the state in the same position in which it had always been. The superior court simply declined to use its discretion in a way that would have allowed the state to use a dismissal to secure an advantage. We perceive no abuse.

¶17        Had the victim never come forward, the trial would have proceeded. Had the court declined the prosecutor's request not to swear the jury, jeopardy would have attached and the dismissal would have been with prejudice.[2] *See State v. Riggins*, 111 Ariz. 281, 283 (1974). But here, because the state suddenly perceived the prospect of a new advantage at trial, it contends that the court was without discretion to do anything but discharge a sitting jury and facilitate its pursuit of that advantage. We disagree.

¶18        Waits was prepared for trial. The state moved to dismiss, contending contrary to its earlier avowal that it was not prepared to prosecute the case even though the judge, court staff, defendant, defendant's attorney, witnesses, and jury were present *at the state's own request* and prepared to proceed to trial.

¶19        Witnesses regularly change their story on the stand or unexpectedly fail to appear, weakening one party's case to the benefit of the other. The state had the same evidence at its disposal when it asked for a dismissal as it did when it asked for trial. The victim's fleeting reemergence had no effect—apart from forcing the state to confront the existing weaknesses of its case. Granting a motion to dismiss without prejudice would have prejudiced Waits, who would lose his chance to argue against the state's weaker case, which it had represented to the court it was ready to prosecute. If we were to hold that the court lacked discretion in these circumstances, we would effectively hold that the court has no discretion at

---

[2]      The state never sought a continuance at any point to try to locate the victim and gather evidence of the "familial relationship" with Waits that it thought might have caused his absence. *See* Rule 8.5. If it had done so, we have little doubt that the continuance would have been granted. But if we were to reverse on this record, we would effectively hold that a motion for continuance is the equivalent of a motion for dismissal without prejudice on the day of trial. These two procedures are vastly different: A continuance allows the court to empower the parties to prepare their cases in due course, while a dismissal disrupts the function of the judicial system.

all to dismiss with prejudice when the state gets cold feet on the day of trial. We find no support for such a proposition in the language of Rule 16.6, and we conclude the court reasonably held that justice would not be served by permitting the state to seek new evidence after attesting it was ready for trial.

**CONCLUSION**

**¶20**　　　　For the foregoing reasons, we affirm the superior court's order dismissing the case with prejudice.

**C A T T A N I**, Judge, dissenting

**¶21**　　　　I respectfully dissent. Our case law has made clear that the determination whether to dismiss a charge with or without prejudice turns on whether a defendant will be prejudiced by the dismissal, and I disagree that the loss of a chance to face a weaker case is the type of prejudice that warrants a dismissal with prejudice. Accordingly, and because the superior court did not make a particularized finding of factors establishing actual prejudice, I would reverse the decision of the superior court.

**¶22**　　　　Rule 16.6(d) requires that dismissal of criminal charges be without prejudice "unless the court order finds that the interests of justice require that the dismissal be with prejudice." Thus, the rule, by its terms, favors dismissal without prejudice. *State v. Gilbert*, 172 Ariz. 402, 404 (App. 1991). And the "most important" factor in determining whether the interests of justice require dismissal *with* prejudice "is whether a delay will result in prejudice to the defendant." *State v. Granados*, 172 Ariz. 405, 407 (App. 1991). Such a showing of prejudice may include that "the state delayed for the purpose of gaining a tactical advantage over [the defendant] or to harass him, and [] that he actually suffered prejudice as a result of the state's conduct." *State v. Garcia*, 170 Ariz. 245, 248 (App. 1991); *see also Gilbert*, 172 Ariz. at 405 (reversing a dismissal with prejudice because the defendant failed to articulate how a last-minute dismissal "actually hurt her ability to defend against the charges").

**¶23**　　　　Further, when dismissing criminal charges with prejudice, a court must make "a reasoned finding that the interests of justice require the dismissal to be with prejudice" and must "actually weigh the factors that bear on the issue." *Garcia*, 170 Ariz. at 248. The court must make "a particularized finding that to do otherwise would result in some articulable harm to the defendant." *State v. Wills*, 177 Ariz. 592, 594 (App. 1993).

¶24        Here, in dismissing the charges with prejudice, the superior court did not cite any articulable harm that impaired Waits's ability to defend against the charges or that otherwise prejudiced Waits, the key factor in determining whether to dismiss with prejudice. *See Granados*, 172 Ariz. at 407; *see also Garcia*, 170 Ariz. at 248 (court must make a "reasoned finding" regarding the interests of justice); *cf. State v. Vasko*, 193 Ariz. 142, 147, ¶ 22 (App. 1998) (noting that, in the related context of a speedy trial violation, assessing prejudice turns on "whether defendant has shown that his defense has been harmed by the delay; it is not sufficient for a defendant to contend that the state may not have made its case had the trial proceeded without the continuance").

¶25        The superior court's only stated basis for its ruling was the State's prior request that the jury not be sworn immediately following jury selection. But that fact does not by itself point to any type of prejudice to Waits, and is in fact a counterintuitive basis for a dismissal with prejudice. By agreeing not to swear in the jury, the court implicitly agreed to avoid the double jeopardy implications of impaneling a jury. *See State v. Soloman*, 125 Ariz. 18, 21 (1980) (noting that the Double Jeopardy Clause of the United States Constitution protects a criminal defendant against repeated prosecutions for the same offense and attaches as soon as the jury is impaneled). And having agreed not to swear in the jury, it was unreasonable for the court to then use that as the basis for dismissing the case with prejudice and imposing a double jeopardy bar to a subsequent prosecution. In my view, if the court believed that the State's request to delay swearing in the jury established a basis for dismissing the case with prejudice, the court should have advised the parties of that belief before agreeing not to swear in the jury. The State then could have decided whether to proceed without testimony from the victim or to seek special action relief to avoid the double jeopardy implications of swearing in the jury.

¶26        The court also noted its belief that the victim may not be interested in testifying. But the victim's alleged recalcitrance does not support a finding of prejudice, and instead simply highlights a factor the State must consider in deciding whether to pursue the case in the future. Thus, none of the court's statements can be construed as a reasoned finding regarding prejudice to Waits justifying dismissing the case with prejudice.

¶27        Even in the absence of a particularized finding, we will affirm if the record otherwise clearly supports dismissal with prejudice. *Wills*, 177 Ariz. at 594. But here, looking beyond the superior court's reasoning, the record does not show cognizable prejudice to Waits. Significantly, when

given a chance to explain why the proposed dismissal should be with prejudice, Waits's counsel argued only that his client wanted to "put this behind him" and "prove his innocence." But "annoyance and [] inconvenience to the defendant" are not the type of harm justifying dismissal with prejudice. *See Gilbert*, 172 Ariz. at 405; *see also Granados*, 172 Ariz. at 407 ("Such generalizations will not support a dismissal with prejudice."). And nothing else in the record supports a finding of prejudice.

¶28 The majority sidesteps our case law requiring a showing of prejudice and instead emphasizes that the State had represented that it was ready for trial a week before jury selection. But there was no suggestion by either the court or defense counsel that the announcement of being ready for trial was the triggering event justifying a dismissal with prejudice; instead the court focused on the prosecutor's request not to swear in the jury, and defense counsel focused on inconvenience to his client. And in any event, the State's prior representation as to its readiness for trial (even if false) does not demonstrate any specific prejudice to Waits. Thus, the announcement that the State was ready to proceed does not establish a basis for dismissing the case with prejudice.

¶29 Furthermore, contrary to the majority's assertion, there is no suggestion that the superior court believed the State was dismissing the case so it could look for new evidence, or that such a factor otherwise demonstrated that Waits's ability to defend himself had been impaired. The day before the dismissal with prejudice, the prosecutor noted that the State had been unable to reach the victim after having previously been in contact with him, and the prosecutor simply requested that the court defer swearing in the jury. The prosecutor also indicated that there might be a "familial relationship" between Waits and the victim, but the court did not suggest in any way that its decision to dismiss the case with prejudice was based on that factor, and the court instead simply noted that any improper coercion or influence by Waits (something not proven or disproven at the time of the court's ruling) would support a dismissal *without* prejudice. Given these circumstances, the superior court's ruling is not supported by the record.

¶30 Finally, reversing the superior court's ruling would not necessarily result in the case going forward. If the State chooses to refile the charges, Waits can proffer evidence demonstrating any actual prejudice suffered as a result of the delay in prosecution. At that point, the superior court can properly assess whether dismissing the case prejudiced Waits's ability to defend himself, and can determine whether to dismiss the charges with prejudice or allow the case to go forward.

## CONCLUSION

¶31 The record does not support dismissing the case with prejudice, and the superior court's only stated reasoning for doing so is in fact counterintuitive and unreasonable. Accordingly, and for the foregoing reasons, I would reverse the order dismissing the charges against Waits with prejudice and remand with instructions that the charges be dismissed without prejudice.

